## Case No. 15,338.

UNITED STATES v. HECKSCHER.

[3 Hunt. Mer. Mag. 71.]

Circuit Court, S. D. New York.    1840.

CUSTOMHOUSE BONDS—ESTOPPEL OF SURETY—EXPORTATION OF SUGARS — DRAWBACK — RELANDING IN UNITED STATES.

[1. The surety on a customhouse bond conditioned that certain sugars, entered for exportation for benefit of drawback, should not be relanded in the United States. is estopped by the recitals of the bond to deny that the quantity

---

[1] [Reprinted from 3 Cent. Law J. 653, by permission.    14 Alb. Law J. 236, contains only a partial report.]

therein specified was in fact laden upon the vessel.]

[2. Where the sugars, after being laden on the vessel, are fraudulently relanded on the dock, the marks obliterated, and other marks substituted, and then replaced on the vessel, in the presence of the customs officials, so as to show on their return a greater number of casks and a larger quantity of sugar than was actually put on board, the transaction is a relanding, within the meaning of the bond, and constitutes a breach thereof.]

At law.

This was an action brought by the United States against Charles A. Heckscher to recover a debt alleged to be due on a bond executed by defendant as one of the sureties of John Doering, dated December 4, 1830, in the penalty of $1,605.20, conditioned that 20 casks of domestic refined sugar, weighing, net, 16,052 pounds, laden by said Doering on board the brig Calliope, and entered for exportation for the benefit of drawback, should not be relanded within the limits of the United States, but should be duly exported to the port of Leghorn, or some other place out of the limits of the United States. The condition of this bond was now alleged to have been broken.

It appeared, from the evidence for the United States, that Doering, who was, in 1830, a sugar refiner in this city, made five separate entries of sugars to be exported, tor the benefit of the drawback, by the Calliope, and that other like entries were made by other persons, the whole amounting to 170,-896 pounds, the drawback on which, at five cents per pound, was paid by the collector upon the production of the regular certificates of the weighmasters and inspectors. When Messrs. De Yough & Co., the consignees at Leghorn, opened the sugars described in Doering's entries, 45 barrels of them were found to be only partly filled, and 20 other barrels, though full, were found to have been substituted for larger casks, so that there was a deficiency of 44,453 pounds of sugar in that part of the cargo described in Doering's entries. For the defense, it was alleged that no part of the sugar laden on board the Calliope had ever been relanded, within the meaning of the bond; that a fraud had been practiced by the persons who made the entries and owned the cargo, upon the officers of the customs, by means of which the returns to the custom house, from which the bonds were filled up, state a larger quantity of sugar to be on board than was actually put on board the vessel; and that the defendant was merely a surety, and had no knowledge or participation in the fraud.

The manner in which it was effected, as appeared in evidence, was thus: After some of the casks of sugar had been weighed, inspected, marked, and put on board the vessel, the shipper had them relanded on the dock, in the presence of the weighmaster and inspector, and the marks completely obliterated from the casks, and new marks put upon them. They were then weighed again in presence of the customhouse officers, and again put on board the vessel, thus showing upon the returns of the customhouse officers a greater number of casks, and a larger quantity of sugar, than was actually put on board. And in order that the number of casks put on board should correspond with the number of casks in the customhouse officers' return, a number of casks equal to those from which the marks were obliterated, were put on board without the knowledge or inspection of the customhouse officers, which casks contained a far less quantity of sugar than those from which the marks had been obliterated.

From a memorandum on the bond, it appeared that it had been regularly discharged by the customhouse in April, 1831, and it may therefore be contended that it had been regularly discharged in law,—that no action could be maintained on it. But it was shown by the cross-examination of the subscribing witness to the bond that this memorandum was made by him, as a clerk in the customhouse, upon the production of a landing certificate signed by Messrs. De Yough & Co., of Leghorn, with the oath of the master and mate of the vessel and the consular certificate, which papers were produced in evidence. And it was shown, on the part of the United States, that this landing certificate was untrue in point of fact.

Mr. Butler, U. S. Dist. Atty.

James A. Hamilton, for defendant.

THE COURT (THOMPSON, Circuit Justice) charged the jury that the defendant, having admitted, by the recitals contained in his bond, that the 20 casks of refined sugar referred to in the bond and in the corresponding entry, had been had on board the Calliope, and that the net weight of the sugar contained therein was 16,052 pounds, he was estopped from denying these facts, and that, if the jury believed, from the evidence, that the casks, or any part of them, described in said entry, after having been weighed and laden on board the vessel, have been taken and replaced on the dock, in the manner and for the purpose described by the witnesses, such relanding, though before the sailing of the vessel, would be a relanding within the United States, within the meaning of the condition of the bond, and of the acts of congress under which it was taken.

The jury found a verdict for the United States for the amount of the bond.